IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| PAUL PETERS, | ) | CIVIL NO. 11-00331 SOM/KSC |
| | ) | |
| Plaintiff, | ) | AMENDED ORDER SEVERING FDCPA |
| | ) | CLAIM AND DIRECTING ENTRY OF |
| vs. | ) | FINAL JUDGMENT IN FAVOR OF |
| | ) | BENTWATER ON THAT CLAIM; |
| ROBERTS MARKEL, PC; | ) | |
| BENTWATER YACHT AND COUNTRY | ) | AMENDED ORDER TRANSFERRING |
| CLUB, LTD.; | ) | REMAINING CLAIMS TO THE |
| BRADY ORTEGA; | ) | UNITED STATES DISTRICT COURT |
| and DOES I THROUGH X, | ) | FOR THE SOUTHERN DISTRICT OF |
| | ) | TEXAS, HOUSTON DIVISION |
| Defendants. | ) | |
| _____ | ) | |

**AMENDED ORDER SEVERING FDCPA CLAIM AND DIRECTING ENTRY OF FINAL JUDGMENT IN FAVOR OF BENTWATER ON THAT CLAIM;**

**AMENDED ORDER TRANSFERRING REMAINING CLAIMS TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION**

I.        INTRODUCTION.

On May 24, 2011, Paul Peters, a Utah attorney who now resides in Hawaii, filed this action against Bentwater Yacht and Country Club, Ltd., and its attorneys, Brady Ortego, Esq., and the law firm of Roberts Markel, PC.  See ECF No. 1.  The Complaint asserted claims under the Fair Debt Collection Practices Act ("FDCPA"), Racketeer Influenced and Corrupt Organizations ("RICO") Act, and various state laws arising out of membership dues supposedly owed to Bentwater for separate properties purchased by Peters and his wife.  Id.

By stipulation, the RICO claim was dismissed without prejudice.  See ECF No. 26.  The stipulation provided that, if

this case were transferred, Peters could "reinstate and refile the RICO claim provided it complies with the Local Rules of the United States District Court and the Federal Rules of Civil Procedure." Id. Defendants reserved the right to challenge the sufficiency of any such claim.  Id.

Peters has recently settled and dismissed with prejudice all claims against Defendants Ortego and Roberts Markel.  See Stipulation for Partial Dismissal of Complaint With Prejudice As Against Defendants Roberts Markel, PC and Brady Ortego and Order, ECF No. 191.

The present order includes matters that were included in motions argued before this court on May 8, 2012.  Following that hearing, the court granted Bentwater summary judgment with respect to the FDCPA claims.  See Amended Order Granting in Part, Denying in Part, and Continuing in Part Motions for Summary Judgment, ECF No. 131, June 13, 2012.

The only claims remaining in this case are state-law claims asserted against Bentwater for Theft (Second Claim for Relief); Wrongful Lien (Fourth Claim for Relief); and Breach of Contract (Fifth Claim for Relief).

Before the court are two matters.  First, the court still has a portion of Bentwater's continued motion to dismiss for failure to state a claim, failing to plead fraud with particularity, lack of personal jurisdiction, and improper venue.

Bentwater alternatively seeks to have this matter transferred to the United States District Court for the Southern District of Texas, Houston Division. <u>See</u> ECF No. 34.

Second, Peters moves for Rule 54(b) certification of this court's earlier order granting summary judgment to Bentwater on claims brought under the FDCPA. Peters also seeks a stay of any order transferring venue to allow him to appeal the grant of summary judgment in favor of Bentwater on his FDCPA claims. <u>See</u> ECF No. 184. Pursuant to Rule 21 of the Federal Rules of Civil Procedure, the court severs the FDCPA claims on which Bentwater has been granted summary judgment and directs the Clerk of Court to enter judgment in favor of Bentwater on those claims. The court transfers the rest of the case (i.e., the state-law claims against Bentwater) to the United States District Court for the Southern District of Texas, Houston Division.

## II.      BACKGROUND.

The facts of this case were set forth in this court's Amended Order Granting in Part, Denying in Part, and Continuing in Part Motions for Summary Judgment, ECF No. 131, June 13, 2012. Those facts are incorporated herein by reference and are supplemented as stated below.

III.     ANALYSIS.

     A.     **The Remainder of the Case is Transferred to Texas.**

     The court agrees with Bentwater that transferring all remaining claims to a court in Texas is appropriate under 28 U.S.C. § 1404(a).

     A request for transfer of venue is governed by 28 U.S.C. § 1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  The purpose of § 1404(a) is to "to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'"  Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (quoting Continental Grain Co. v. Barge FBL-585, 364 U.S. 19, 26-27 (1960)).  Under § 1404(a), the district court has discretion "to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness."  Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000) (citation and internal quotation marks omitted); Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 27 (1988) (same). "Weighing of the factors for and against transfer involves subtle considerations and is best left to the discretion of the trial judge."  Ventress v. Japan Airlines, 486 F.3d 1111, 1118 (9th

Cir. 2007) (quoting <u>Commodity Futures Trading Comm'n v. Savage</u>, 611 F.2d 270, 279 (9th Cir. 1979)).

The Ninth Circuit has stated that courts must weigh multiple factors when considering a motion for change of venue. <u>See</u> <u>Jones</u>, 211 F.3d at 498.  For example, courts consider:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

<u>Id.</u> at 498-99 (internal footnotes omitted).

The factors a district court must consider may be divided into private and public interest factors.  <u>Decker Coal Co. v. Commonwealth Edison Co.</u>, 805 F.2d 834, 843 (9th Cir. 1986) (citing <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235, 241 (1981)).  Private interest factors include "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive."  <u>Id.</u> (quoting <u>Gulf Oil Corp. v. Gilbert</u>, 330 U.S.

501, 508 (1947)).  Public interest factors include "the administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; . . . and the unfairness of burdening citizens in an unrelated forum with jury duty."  Id. (quoting Piper Aircraft, 454 U.S. at 241 n.6).

The inconvenience to witnesses is often the most important factor in determining whether a transfer of venue is appropriate.  See Saleh v. Titan Corp., 361 F. Supp. 2d 1152, 1160 (S.D. Cal. 2005) (quoting State Street Capital Corp. v. Dente, 855 F. Supp. 192, 197 (S.D. Tex. 1994)); Ruiz v. Affinity Logistics, 2005 WL 5490240, at *8 (N.D. Cal. Nov 7, 2005).  The convenience of nonparty witnesses is more important than the convenience of party witnesses.  Saleh, 361 F. Supp. 2d at 1160 (quoting Aquatic Amusement Associates, Ltd. v. Walt Disney World Co., 734 F. Supp. 54, 57 (N.D.N.Y. 1990)).

Ultimately, the moving party has the burden of showing that the alternative venue is more appropriate.  Ah Sing v. Kimoto, 2012 WL 1366600, *2 (D. Haw. Apr. 18, 2012) (citing Tamashiro v. Harvey, 487 F. Supp. 2d 1162, 1168 (D. Haw. 2006)).  Bentwater easily meets that burden.  Peters, himself an attorney, should have, at the very least, questioned whether he lacked standing to assert his wife's FDCPA claims and whether Bentwater could actually be considered a "debt collector."  Peter's

decision to assert those claims anyway does not make Hawaii the proper venue for this case.  When the court examines this case as it should have been filed (without what the court has determined to be uncognizable FDCPA claims), transfer of this case to Texas is appropriate.

The first, fourth, fifth, and eighth <u>Jones</u> factors-- (1) the location where the relevant agreements were negotiated and executed; (4) the parties' contacts with the chosen forum; (5) the contacts relating to Peters's cause of action in the chosen forum; and (8) the ease of access to sources of proof-- weigh heavily in favor of transferring this matter to Texas.

With the dismissal of Peters's FDCPA claims, this case now arises solely from the purchase of two Texas properties. Whether Peters or his wife must pay dues for a second "social club" membership will require review of the declarations of covenants, conditions, and restrictions for the Texas properties (and any amendments thereof).  Whether Peters negotiated a change to those documents may also be in issue.  The first, fourth, fifth, and eighth factors clearly favor a transfer to Texas because most of the evidence concerning the purchase of the properties and membership dues is in Texas.  Hawaii indisputably lacks any tie to the purchase of the two Texas properties.  It appears that Bentwater's only contact with Hawaii has been through attempting to collect the outstanding debt Peters's wife

allegedly owes.  To the extent Peters complains about money being

taken out of his checking account without authorization, it is

undisputed that the money was taken out of a Florida account, not

a Hawaii account.

The second Jones factor--the state most familiar with

the governing law--weighs in favor of a transfer to Texas.  The

remaining claims of the Complaint seek damages for 1) violations

of the Texas Theft Liability Act, section 772.11 of the Florida

Statutes, and chapter 708 of Hawaii Revised Statutes (Second

Claim for Relief); 2) wrongful lien under Texas law (Fourth Claim

for Relief); and 3) breach of contract (Fifth Claim for Relief).

Most of the Complaint's state-law claims involve an examination

of Texas law.  The sole reference to Hawaii law involves criminal

statutes that have a questionable role in this civil action.  A

Texas court will be more familiar with Texas law than this court

is, and Texas's community property and land recordation systems

appear different from Hawaii's systems.

The third Jones factor--Peters's choice of forum--is

the only Jones factor that weighs in favor of continuing

litigation in Hawaii.

The sixth Jones factor--the differences in the costs of

litigation--weighs in favor of litigating this matter in Texas.

Most of the witnesses concerning the remaining state-law claims

are located in Texas.  Therefore, the overall cost of litigating

this matter in Texas will be less than litigating it in Hawaii. The cost of requiring Bentwater and its witnesses to travel to Hawaii will greatly exceed the cost of having Peters and his wife travel to Texas, where the properties at the heart of this dispute is located.  The court understands that Peters would like to have Hawaii residents testify regarding his inability to get financing given the lien placed on his house, but Peters himself may so testify.  Moreover, those witnesses are not relevant to whether there was an agreement to charge membership dues for only one property.  The court does recognize that bearing the cost of litigating this matter in Texas may be more difficult for Peters than bearing the cost of litigating this matter in Hawaii would be for Bentwater.  Nevertheless, on balance, the differences in the cost of litigation weigh in favor of litigating the matter in Texas.

The seventh <u>Jones</u> factor--availability of compulsory process--weighs in favor of litigating the matter in Texas.  This court lacks subpoena power to require "a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles."  <u>See</u> Fed. R. Civ. P. 45(c)(3)(B)(iii).  This limitation may apply to various witnesses who participated in the negotiation and sale of the second Bentwater property to Peters's wife.  The witnesses may include, for example, Trina Almas, Bentwater's membership director in

Texas who sent Peters and his wife numerous letters about the social club membership dues and may have knowledge about Peters's authorization to pay his dues automatically. <u>See</u> Declaration of Trina Almas, ECF No. 34-3 (Oct. 21, 2011). The court recognizes that Peters may want to compel witnesses regarding his inability to refinance his Hawaii property. As noted above, Peters and his wife can themselves testify about Peters's alleged damages.

On balance, the convenience of most of the witnesses, especially the nonparty witnesses, the location of the properties, the location of evidence, and the types of claims being asserted weigh in favor of transferring the remaining state-law claims to Texas.

**B. Severance and Entry of Judgment.**

The court turns now to Peters's motion for Rule 54(b) certification and a stay of proceedings in the event venue is transferred outside of the Ninth Circuit. <u>See</u> ECF No. 184. Peters expresses concern that he will be unable to appeal this court's grant of summary judgment in favor of Bentwater with respect to the FDCPA claims if the state-law claims are transferred to Texas. His concern arises because the Fifth Circuit cannot review a decision by a district court within the Ninth Circuit. This court concludes that there is a simpler, more time-efficient alternative to Rule 54(b) certification that preserves Peters's right to appeal the FDCPA decision to the

Ninth Circuit while still allowing the remaining claims to proceed in Texas without waiting for an appellate decision regarding the FDCPA claims.

The court stresses that it is by no means ignoring Peters's concern.  To the contrary, this court recognizes the validity of his concern.  Just such a concern was the subject of Matrix Group Limited, Inc. v. Rawlings Sporting Good Company, Inc., 378 F.3d 29 (1st Cir. 2004).  In that case, the district court in Maine decided two motions at the same time.  The first order denied the plaintiff's request for a preliminary injunction.  The second granted the defendant's request to transfer venue to Missouri.  Id. at 32.  The plaintiff appealed the denial of the preliminary injunction to the United States Court of Appeals for the First Circuit.  The First Circuit began its analysis by noting that, under 28 U.S.C. § 1294, "appeals from reviewable decisions of the district and territorial courts shall be taken to the courts of appeals as follows: (1) From a district court of the United States to the court of appeals for the circuit embracing the district."  The First Circuit therefore noted that the plaintiff could only appeal the denial of the preliminary injunction to the First Circuit, even though the case had been transferred to Missouri.  Id.

Although appellate jurisdiction in the First Circuit had been perfected before the transfer to Missouri was completed,

the First Circuit described its situation as "unusual."  If it reversed the denial of a preliminary injunction, the First Circuit could not then order the Missouri district court to enter the preliminary injunction.  Id.  At best, the First Circuit could ask the Missouri district court to return the case file so that the Maine district court could enter the preliminary injunction.  Id.  Accordingly, the First Circuit stated that transferring a case outside the circuit while an interlocutory appeal was pending was disfavored.  The First Circuit would have preferred that the § 1404 transfer order had been stayed when issued until any interlocutory appeal was resolved.  Id.

        The Matrix preference is the procedure Peters urges on this court.  However, this court notes that Rule 21 of the Federal Rules of Civil Procedure allows it to "sever any claim against any party."  Once a claim has been severed under Rule 21, "it proceeds as a discreet unit with its own final judgment, from which an appeal may be taken."  7 Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure, § 1689 (3d ed. 2001).  A district court has "broad discretion" in determining whether such a severance is appropriate.  See In re EMC Corp., 677 F.3d 1351, 1355 (Fed. Cir. 2012); Rice v. Sunrise Express, Inc., 209 F.3d 1009, 1016 (7th Cir. 2000); Anticancer, Inc. v. Pfizer Inc., 2012 WL 1019796 (S.D. Cal. Mar. 26, 2012). "As long as there is a discrete and separate claim, the district

court may exercise its discretion and sever it." <u>Rice</u>, 209 F.3d at 1016.

Pursuant to Rule 21, the court severs the FDCPA claims against Bentwater that Peters asserted in the First Claim for Relief from the remainder of the claims in the Complaint.  The FDCPA claims assert that Bentwater engaged in abusive debt collection practices.  As discussed in the court's June 13, 2012, order, Peters's FDCPA claims against Bentwater are based on 1) December 2004 and May 2005 letters congratulating Peters and his wife on purchasing property and enclosing applications for credit (<u>see</u> ECF Nos. 83-7 and 34-10); 2) bills Bentwater sent to Peters's wife, not Peters (<u>see</u> ECF Nos. 83-11 and 83-12); and 3) a March 2, 2010, letter addressed to Peters's wife that notified her that she and her family had no right to use club facilities and that her name had been posted on the club's delinquent list (<u>see</u> ECF No. 31-30).  These claims are sufficiently distinguishable from the remaining state-law claims that severance is appropriate.

The state-law claims assert that Bentwater stole Peters's money (Second Claim for Relief), put a fraudulent lien on his property (Fourth Claim for Relief), and breached the contract to provide membership services to him (Fifth Claim for Relief).  The court is unpersuaded by Peters's argument that the

FDCPA claims and the remaining state-law claims should not be severed because the claims involve common facts.

Peters says that, when he appeals this court's determination with respect to the grant of summary judgment to Bentwater on the FDCPA claims asserted against it, that appeal will challenge several factual determinations important to the state-law claims.  This court believes that its summary judgment order relied on facts concerning which there were no genuine issues of material fact.  The court nevertheless examines the purported factual determinations that Peters identifies as relevant to his appeal.

First, at a hearing on August 27, 2012, Peters said that this court found that the Creekwood property was a separate property.  The court is not entirely sure what Peters meant by this, as there was no dispute that the deeds for the properties located in "Creekwood" and in "Edgewood" covered different properties.  Compare ECF No. 31-9 with ECF 31-8.  Peters may have been arguing that he wants to appeal this court's determination that Angela M. Peters is the owner of record of the Creekwood property.  The court made that determination in the course of ruling that Peters lacked statutory standing to sue Brady Ortego and the law firm of Roberts Markel, PC, for having placed a lien on the Creekwood property on behalf of the Bentwater Property Owners Association, Inc.  See ECF No. 131 at 32 (Amended Order);

ECF No. 31-33 ("Notice of Assessment").  Having dismissed all claims against Ortego and the law firm with prejudice, Peters may not appeal the court's grant of summary judgement in their favor. Thus, the determination Peters complains about (assuming the court is correctly understanding Peters's assertion) is irrelevant to any appeal.

It is unclear to this court how any determination that Peters's wife is the owner of record for the Creekwood property can have law of the case effect.  The determination that Angela Peters is the owner of record of the Creekwood property is unnecessary to the grant of summary judgment in favor of Bentwater on the FDCPA claims asserted against it.  As the Ninth Circuit noted in Rebel Oil Co. v. Atlantic Richfield Co., 146 F.3d 1088, 1093 (9th Cir. 1998), the "law of the case" doctrine generally precludes courts from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case.  For the doctrine to apply, the issue in question must have been decided explicitly or by necessary implication in the previous disposition.  While the determination governed the FDCPA claim against Ortego and the law firm, it is, at best, dicta or arguably of persuasive value only with respect to state-law claims against Bentwater.

Second, at the continued hearing on August 27, 2012, Peters claimed that his FDCPA claim was based, in part, on the

inclusion by Bentwater of his name on a delinquent list at the club.  This was not a matter asserted in the Complaint.  At most, Peters's Combined Opposition indicates that he believes his name was posted on a delinquent list based on the March 2, 2010, letter.  <u>See</u> ECF No. 31-30.  This letter was addressed to only Angela Peters, not Peters himself.  Accordingly, when it stated that "Your name has been posted on the Club's delinquent list," it appears to have been referring only to Angela Peters, not Peters.[1]  <u>Id.</u>  In any event, Peters does not even attempt to show how any posting relates to his claims for Theft, Wrongful Lien, or Breach of Contract.

Third, at the continued hearing, Peters claimed that Bentwater's alleged taking of money from his account is a fact implicated in his FDCPA and theft claims.  Peters's declaration

---

[1]In a declaration, Peters misrepresents the content of the letter of March 2, 2010.  ECF No. 31-30.  In paragraph 16 of his declaration, Peters states that the letter indicated to him: "Your membership privileges for this account have been suspended as well as any other Bentwater account."  <u>See</u> Peters's Decl. ¶ 16, ECF No. 83.  However, as discussed above, the letter was clearly addressed to Angela Peters, not Peters.

Peters's declaration did correctly note that the letter told Angela Peters that, during the period her account was suspended, she and her family, which would include Peters, had no right to use the club facilities.  <u>See</u> Peters's Decl. ¶ 16.  Bentwater was granted summary judgment on that claim because Bentwater was attempting to collect its own debt and was therefore not a "debt collector" for purposes of the FDCPA.  <u>See</u> Amended Order at 20-22.  Whether Bentwater is or is not a debt collector is unrelated to Peters's remaining state-law claims and therefore provides no reason for this court to decline to sever the FDCPA claims from the state-law claims.

stated that Bentwater had debited $329.38 per month from his checking account.  See Peters's Decl. ¶ 12, ECF No. 83.  Peters may have authorized this transfer of money in February 2005, see ECF No. 95-8 (sealed Authorization Agreement for Direct Payments), but claims that this money was stolen from him.  See Complaint, Second Claim for Relief--Theft.  In any event, it was not at all clear to the court that the alleged taking of funds related to the FDCPA claims against Bentwater.  After the court filed its original order on May 24, 2012 (but before the court filed its June 13, 2012, Amended Order, which only dropped references to the settled RICO claim), Peters filed a "Plaintiff's Statement" in which he explained that Bentwater had violated 15 U.S.C. §§ 1692(d) and (f) by automatically debiting funds from his checking account.  See ECF No. 129 ¶ 7.  Those sections apply only to "debt collectors."  This court determined that Bentwater was not a "debt collector" because it was attempting to collect its own debt.  Peters's reliance on §§ 1692(d) and (f) is therefore misplaced.  The remaining state-law claims are unrelated to Bentwater's status as a "debt collector."  Peters's theft claim therefore provides no reason to refrain from severing the FDCPA claim.  Peters may proceed with his theft claim, with the claim's merits or deficiencies unaffected by the court's FDCPA ruling.

Fourth, at the continued hearing on the motions, Peters mentioned that he wanted the Ninth Circuit to review the Magistrate Judge's order limiting discovery to jurisdictional issues.  <u>See</u> Order Granting Defendants' Motion to Stay All Discovery Except for Jurisdictional Discovery, November 8, 2011, ECF No. 47.  But Peters did not appeal that order to this court and therefore forfeited any such review by the Ninth Circuit.  <u>See</u> <u>Simpson v. Lear Astronics Corp.</u>, 77 F.3d 1170, 1174 (9th Cir. 1996) ("a party who fails to file timely objections to a magistrate judge's nondispositive order with the district judge to whom the case is assigned forfeits its right to appellate review of that order"); Fed. R. Civ. P. 72(a) ("A party may not assign as error a defect in the order not timely objected to.").  The order limiting discovery therefore provides no reason to refrain from severing the FDCPA claim.

The court severs the FDCPA claim pursuant to Rule 21 and orders that judgment be entered in favor of Bentwater with respect to the FDCPA claim.[2]  The court transfers the remaining

---

[2]An interlocutory decree pursuant to Rule 54(b) of the Federal Rules of Civil Procedure would alternatively be proper, if severance is deemed by the Ninth Circuit to be inappropriate. Under Rule 54(b), when multiple claims or parties are involved, a court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties, provided it expressly determines that there is "no just reason for delay," and expressly directs "the entry of judgment."  Fed. R. Civ. Pro. 54(b).  A court has wide discretion in granting a Rule 54(b) motion, and exercises this power in view of judicial administrative interests as well as the equities involved. <u>See</u> <u>Reiter v. Cooper</u>, 507 U.S. 258, 265 (1993) (citations omitted);

claims to the United States District Court for the Southern

District of Texas, Houston Division.   This procedure preserves

Peters's right to appeal this court's grant of summary judgment

in favor of Bentwater on the FDCPA claims while allowing the

remaining state-law claims to go forward without delay in Texas.

**IV.       CONCLUSION.**

Pursuant to Rule 21 of the Federal Rules of Civil

Procedure, the court severs the FDCPA claims asserted against

Bentwater from the remaining state-law claims.   The court directs

the Clerk of Court to enter final judgment in favor of Bentwater

with respect to the FDCPA claims asserted in the First and Fourth

Claims for Relief in the Complaint.   The court denies Peters's

request to stay this case.   Bentwater is not granted judgment on

any state-law claim.   Instead this court transfers the remaining

---

Cadillac Fairview/Cal., Inc. v. United States, 41 F.3d 562, 563
n.1 (9th Cir. 1994) (per curiam) ("The present trend is toward
greater deference to a district court's decision to certify under
Rule 54(b).") (citing Texaco, Inc. v. Ponsoldt, 939 F.2d 794, 798
(9th Cir. 1991)).   Given the court's determination that the FDCPA
claims are factually distinct from the remaining state-law
claims, Rule 54(b) certification is appropriate because there is
no just reason for delay.   The court here expressly directs the
entry of judgment in favor of Bentwater with respect to the FDCPA
claims.

state-law claims to the United States District Court for the Southern District of Texas, Houston Division.

IT IS SO ORDERED.

DATED: Honolulu, October 31, 2012.



/s/ Susan Oki Mollway

Susan Oki Mollway
Chief United States District Judge

Peters v. Roberts Markel, PC, et al., Civ. No. 11-00331 SOM/KSC; AMENDED ORDER SEVERING FDCPA CLAIM AND DIRECTING ENTRY OF FINAL JUDGMENT IN FAVOR OF BENTWATER ON THAT CLAIM; AMENDED ORDER TRANSFERRING REMAINING CLAIMS TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION

20